Fox & ALS. *petitioners, vs.* WIDGERY.

If a disseisor takes from the disseisee a naked release of all his interest in the
land, no relations arise between them, by which one is placed in subordination to
the other ; and the disseisin is not thereby purged ; nor is the disseisor estopped
from denying that the disseisee had any title to the land.

THE petitioners in this case prayed for partition of a small
parcel of land which they held in common with the respondent;
who resisted their petition, under the plea of sole seisin.

To support this plea, the respondent proved that in 1808 his
grandfather and devisor, *William Widgery*, extended three writs
of execution upon the whole parcel, of which partition was prayed,
as the property of *Woodbury Storer* ; that the return was duly
registered ; and that the creditor immediately entered into pos-
session of the whole, claiming it as his own, and so continued till
his death ; when the respondent succeeded him in the possession,
as his devisee.

At the time of the extent, Mr. *Storer* was supposed to be the
owner of the whole tract, he being in possession and claiming
the whole.   But in truth the title to a part of it remained in the
heirs of *Benjamin Titcomb* ;  six of whom executed to Mr. *Wid-
gery*, the devisor, a deed of release of all their interest in the
premises, *July* 22, 1815, which was immediately registered, and
for which he paid no consideration.   The other heir of Mr. *Tit-
comb*, was Mrs. *Eunice Storer*, deceased ;  whose surviving hus-
band, *Ebenezer Storer*, with their children, executed to the peti-
tioners, on the 10th of *August*, 1821, a similar release of their
interest in the same parcel of land, " which was not devised by
the last will and testament of the said *Benjamin*, but descended
to us and others his heirs ; hereby meaning and intending to quit-
claim and release all our right and interest in and to the premi-
ses," &c.    After the execution of this deed, Mr. *Widgery* applied
to one of the same heirs, to purchase his interest in the land.

Upon this evidence, the counsel for the respondent contended
that the possession of the whole parcel by the devisor, under the
extent, was exclusive and adverse to the right of all others ; and

was a disseisin of the ancestor of the grantors of the petitioners, continuing till after the execution of their deed ; by which, there fore, nothing passed to the petitioners.   They also contended that if the deed did operate to pass the estate of the children, yet it did not pass the right of Mr. *Storer,* as tenant by the curtesy. But the Chief Justice, before whom the cause was tried,  ruled that even if  the possession of  the devisor was exclusive and ad-verse, up to the time when he  took a  deed of  release from  the heirs of *Benjamin Titcomb* in 1815 ;  yet the acceptance  of that deed, and his subsequent application to purchase the share of the heirs of Mrs. *Storer,* amounted to  a waiver of  all possessory claims to that part, and put an end to any supposed  prior dissei-sin of the true owners ;—that after he had purchased of six of the heirs of Mr. *Titcomb,* he must be  considered as  holding in com-mon with the seventh , and that therefore the deed of Mrs. *Stor-er's* heirs was operative and effectual to convey to the  petition-ers their title, including that of Mr. *Storer* as tenant by the cur-tesy.   And the jury, being thus instructed,  returned a verdict for the petitioners, which was taken subject to the opinion of the court upon the points raised at the trial.

*Hopkins* and *Emery,* for the  respondents, contended  that the petitioners were not seised in fact, and therefore were  not enti-tled to the remedy by petition for  partition.    *Bonner  &  als.  v. Proprs. of the Kennebec purchase* 7 *Mass.* 475.   *Barnard v. Pope* 14 *Mass.* 434.   Mr. *Woodbury Storer*  had the land in  his own exclusive and  adverse  possession ;  his creditor Mr. *Widgery* took it by extent, and devised it ; and his devisee entered, claim-ing title to the whole.   After fourteen years' exclusive posses-sion,  and a  descent cast,  the right of  entry was  gone, and this remedy with it.   The extent of the execution gave to the cred-itor actual  seisin of  all the land described in  the  return ; and operated a disseisin of all other persons.   Nothing therefore passed to the petitioners by their deed.   *Langdon v.  Potter* 3 *Mass.* 215.    *Gore v. Brazier ib.* 523.    *Wyman v.  Brigden* 4 *Mass.* 150.   *Bigelow v. Jones ib.* 512.   *Chapman v. Gray* 15 *Mass.* 439.   *Hathorne v. Haines* 1 *Greenl.* 238.   *Ken. proprs. v.*

*Laboree* 2 *Greenl.* 275.    6 *Dane's Abr. ch.* 191. *art.* 6.    3 *Dane's Abr. ch.* 92 *art.* 1, *sec.* 5, 8.    4 *Dane's Abr. ch.* 104 *art.* 3 *sec.* 1, 2, 3, 5, 9.    *Stearns on Real actions, p.* 41.

Nor was the disseisin thus made by *Widgery* ever purged by any subsequent consent to hold under the disseisee.    He paid nothing for the deed ; it contained no covenants ; he merely bought his peace, by extinguishing what he regarded as a pretended and groundless claim to his land.    *Small v. Procter* 15 *Mass.* 495.    *Somes v. Skinner* 16 *Mass.* 348.    *Blight's lessee v. Rochester* 7 *Wheat.* 535, 547.

And the deed to the petitioners, as it was obtained with a full knowledge of all the facts, was void in law : being the purchase of a disputed title.    5 *Com. Dig.* 16. *Maintenance A.    Everenden v. Beaumont* 7 *Mass.* 76.    6 *Dane's Abr. ch.* 196 *art.* 7.    *Swett v. Poor* 11 *Mass.* 549.    *Wolcot v. Knight* 6 *Mass.* 418.    *Phelps v. Decker* 10 *Mass.* 267.    *Co. Lit.* 369.    6 *Dane's Abr. ch.* 202, *art.* 9.

They further insisted that in the deed to the petitioners, the general description of all the interest of the grantors in the premises, was restrained by the particular description of such estate as they had by descent from their ancestor; and that therefore the estate of Mr. *Storer*, as tenant by the curtesy, did not pass, his title not being by descent, but by marriage ; *Browning v. Wright* 2 *B. & P.* 14 ; and thus the deed could not take effect, nor the grantees have this remedy, till after his decease.

*Longfellow* and *Greenleaf*, for the petitioners, denied that the possession of Mr. *Widgery*, the elder, was adverse or hostile in its character; and contended that, in the absence of any proof to the contrary, the legal presumption was that he held in submission to the rights of his cotenants.    If he did not know that there was an outstanding title, then his occupancy of the whole parcel was at most but a possession by mistake, and therefore no disseisin.    *Brown v. Gay* 3 *Greenl.* 126.    *Little v. Libby* 2 *Greenl.* 242.    As soon as he discovered the existence of the title of the heirs of Mr. *Titcomb* to a portion of the land, he admitted its validity by purchasing under it, thus recognizing the right of the other heirs, who afterwards sold to the petitioners.    Having

placed on record a deed from *Titcomb's* heirs as his grantors, this was notice to the public that those heirs had a right to convey. It was therefore no offence in the petitioners, to purchase their title.

The language of the deed, they insisted, was such as shewed an intent in the grantors to divest themselves of all title to the land. If this was not the meaning of Mr. *Storer's* deed, it can have no operation whatever as to him, because he had no pretence of title, other than his tenancy by the curtesy. *Bott v. Burnell* 11 *Mass.* 163.

To shew that here was no descent cast, because there was no actual disseisin, they cited 4 *Dane's Abr. ch.* 132, *art.* 3. And they contended that the remedy by petition for partition existed wherever there was a right of entry into the lands. *Wells v. Prince* 9 *Mass.* 508. 4 *Dane's Abr. ch.* 132, *art.* 8, *sec.* 12.

The opinion of the court was read at the following *November* term, as drawn up by

WESTON J. The respondent claims to be sole seised of the premises, whereof partition is prayed. It appears that in 1808, *Woodbury Storer* was in possession of the premises, claiming, and being supposed, to be the owner of the whole. In that year, *William Widgery*, having obtained judgment against the said *Storer*, duly levied an execution, which had issued thereon, upon the whole tract. He continued to hold under this levy as long as he lived; and by his last will devised it to the respondent, who, upon the decease of *Widgery* the elder, entered upon the premises, and has ever since been in possession of the same. It further appears that, during this period, and before, the right to the proportion claimed by the petitioners, was in the heirs of *Benjamin Titcomb*, who, in *August* 1821, conveyed the same by deed to the petitioners ; if by law it was competent for them so to do.

By the levy in 1808, *Widgery*, the elder, became seised of the whole ; and that, not in the character of a disseisor of a part, but by apparent right. He thereby had all the title, which *Storer* could have given him by deed. *Storer* being in actual pos-

session, and claiming the whole, and being the reputed owner thereof, although he might be a disseisor of part; yet his grantee, coming in innocently, would acquire a seisin, which, though defeasible, would be regarded as lawful. Even if he held as a disseisor, until the disseisin was purged, the party having the right could not pass his interest to a third person ; still less could he do so, while the lawful seisin was in another. Unless therefore .the sole seisin, which *Widgery* acquired by the levy, had been waived and abandoned by him, nothing passed 'by the deed under which the petitioners claim ; the right only, not the seisin, remaining in the heirs of *Benjamin Titcomb.*

It is contended that the release, given by the heirs of *Titcomb* to *Widgery*, in 1815, purged the disseisin ; and that he thenceforward held under their title, and ought not to be permitted to deny it. A disseisin may be purged by entry, by judgment of law, by abandonment of the possession on the part of the disseisor, or by his consenting to hold under the disseisee. If it was done in this case, it must have been by the last mode. If the disseisor take a lease from the disseisee, he then holds under him ; and will not be permitted to dispute the title of his lessor. But if he take a release of all his interest, no relations arise between them by which the one is placed in subordination to the other. The releasor has no further interest in the title ; nor is the releasee under any obligation to defend it; or to abstain from any act inconsistent with it. He is not estopped by the release ; for it is not his deed. The grantee may be permitted to show that his grantor was not seised; which is uniformly done in actions brought on the covenant of seisin.

In the case of *Blight's lessee v. Rochester*, 7 *Wheat.* 547, cited in the argument, *Marshall C. J.* in delivering the opinion of the court, says that the lessee, " cannot be allowed to controvert the title of the lessor, without disparaging his own; and he cannot set up the title of another, without violating that contract, by which he obtained and holds possession, and breaking that faith which he has pledged, and the obligation of which is still continuing, and in full operation.'' After adverting to the policy of the times in which this doctrine originated, and tracing it back to the feudal

tenures, he adds, " The propriety of applying the doctrines be-- tween lessor and lessee to a vendor and vendee may well be doubt-- ed.   The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor.   The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed.   The property having become, by the sale, the property of the vendee, he has a right to fortify that title by the purchase of any other, which may protect him in the quiet enjoyment of the premises.   No principle of morality restrains him from doing this ; nor is the letter or spirit of the contract violated by it."

The party in possession may lawfully purchase in any title, real or pretended.   It is for the public good that it should be so The law favors all acts, which go to secure men in the quiet enjoyment of their estates and possessions.   To this end also it fixes periods, beyond which the title of the possessor cannot be disputed.   The purchase of an adversary claim therefore, although it may strengthen, ought never to have the effect to impair, the title of the possessor.   If it were otherwise, he would often be deterred from purchasing his peace, and constrain- ed, at perhaps greater expense and sacrifice, to defend at law, for fear of having his own title tainted and infected by the defects of that which he might, to avoid the vexation of a lawsuit, be dis- posed to purchase, if he could do it with safety.

In the case before us no consideration having been paid for the right passed by the release, it was treated as of little or no value.   It could not have been in the contemplation of *Widgery* that, by taking it, instead of continuing to be seised of the whole of the premises, as he was before, he thereafterwards was seised only of a part in common and undivided.   It was plainly a meas-- ure of precaution, from which he might hope to derive a benefit, but which could not have been intended by him as a waiver or abandonment of any of his former rights.   At any rate, the question whether it was in fact, or was intended to be, a waiver or abandonment of these rights, was one proper for the consideration

of the jury, and which, as such, should have been submitted to their decision; it being a question of intention. In the numerous causes which have come before the court, where the inquiry has been whether a possession of lands was of such a character as to amount to a disseisin of the true owner ; or whether an actual disseisin had been purged or waived by the subsequent conduct, or confessions, or declarations of the disseisor, the subject of inquiry has been submitted as a matter of fact to the jury, for their determination. In this respect the case at bar differs from that of *Little v. Libby*, cited in the argument, and many others which have since been tried, where no question of law has been reserved on the point. In the case before us, the judge decided the question himself, instead of leaving it to the jury. We are therefore of opinion that the verdict must be set aside and a *New trial granted.*