Peck, J.
The court below, as set forth in the first bill of exceptions, found that John McIntosh, during his marriage with Susannah, was seized as of an estate of inheritance in the premises described in the petition; and in this, it is said, there was error.
It is stated as a predicate for the finding, that it was proved that John McIntosh was in possession of the premises during said marriage, claiming title thereto, and that while so in possession, he conveyed the same in fee, with covenants of seizin and general warranty, to the defendant, Ward, and delivered the possession to him. That Ward had retained the possession ever since that time, and did not derive either title or possession from any other source.
If these facts establish, prima facie, a seizin in fee, in the husband, the court, in the absence of any countervailing proof, were certainly justified in finding that John McIntosh was so seized during his said marriage.
“By the law of England, possession or quasi possession, as the case may be, is prima facie evidence of property, and the possession of real estate, or the reception of the rents and profits from the person in, is prima facie evidence of the highest estate in that property, namely, a seizin in fee.” Best on Pres. 87; Matth. on Pres. 32.
So in Jackson v. Waltermire, 5 Cow. 301, Ch. J. Savage remarks : “ It is urged, and I think correctly, that the same evidence of seizin should entitle a AYidow to recover her dower, as would be sufficient to authorize a recovery by the heir. In such case ‘ the seizin of the deceased,’ is proved by showing his actual possession of the premises, or by .proving his receipt of rent from the person in possession. This is pre *238 sumptive • evidence of a seizin in fee, and sufficient, till the contrary appears.”
See also, to the same effect, 2 Phil. Ev. 282, and the remarks of Kent, J., in Bancroft v. White, 1 Caines, 190.
In Sparrow v. Kinsman, 1 Comst. 245, Wright, J., holds that a widow, as demandant in dower, established, prima facie, a seizin in fee of her husband, in the lands from which dower was demanded,- “by showing his actual possession of the premises, claiming as owner.”
These authorities fully sustain the ruling of the court below upon the facts stated in the bill of exceptions.
It is claimed, however, that as the statute, 1 S. & C. Stat. 517, 518, permits a widow to have dower, not only in estates of inheritance of which he was seized during coverture, but also of any interest in lands held by her husband at his decease, “ by bond, article, lease or other evidence of claim,” the mere evidence of the husband’s possession, claiming title, is referable to one of the lesser estates of which she was dowable, rather than to an estate of inheritance.
The statute does not alter the rules of evidence or change well established presumptions; and we have already seen, that possession of land under a general claim of title, has always been held, in England and in this country, to be evidence, prima facie, of an estate in fee simple; and if that possession was, in fact, referable to an estate of less dignity and importance, the defendant should have made it manifest by proof. Beside, the unexplained acceptance of a conveyance in fee by the defendant from McIntosh, might well be regarded as an admission, that the husband of the dowress had a fee simple in the premises conveyed.
2. It is said that the court also erred in ruling that the defendant, Ward, upon the facts stated in the first bill of exceptions, was estopped from denying a seizin in fee in John McIntosh, during his marriage with the plaintiff below.
The facts were, substantially, that McIntosh, being in the actual possession of the premises during the coverture for a period of less than twenty-one years, and claiming title thereto, conveyed the same in fee simple to defendant, Ward, with *239 covenants of general warranty, and delivered to Mm the possession. That Ward continued in possession at the trial, and derived neither title nor, possession from any other source.
There is much diversity in the authorities as to the existence,, origin, and just application of the rule, which prohibits a grantee in fee, from denying the title of his grantor. Some of the cases deny its application altogether to persons standing in such relation to each other; while others annex the qualification, “especially, if the grantee does not receive possession from the grantor.” Some cases assert that there is no legal estoppel in such cases, but that the “ moral policy of the law” will not permit the grantee to deny the title of him from whom he received and still holds the possession. In some cases it is held, that the receiving and retaining possession, under such circumstances, is only a prima facie admission by the grantee of the title and right of his grantor, and that he is still at liberty to prove a title in himself derived from other sources; while others limit this right of the grantee to cases in which he did not acquire his possession from the grantor whose title he ‘disputes, or by virtue of his conveyance, but obtained it under some other title or claim, and that such grantee must be permitted to buy his peace, without prejudice to his rights. Blights lessee v. Rochester, 7 Wheat. 535; Watkins v. Holman, 16 Peters, 54; Osterhout v. Shoemaker, 3 Hill N. Y. 518; Coakly v. Perry & Payne, 3 Ohio Stat. Rep. 344; Sparrow v. Kinsman, 1 Comst. N. Y. 242; Norwood v. Marrow, 4 Dev. & Batt. (Law) 441; Hill v. Robinson, 1 Strob. (S. C.) 2, 3; Gaunt v. Wiseman, 3 Bing. N. C. 69; Love v. Gates et al., 4 Dev. & Batt. 364.
Notwithstanding the apparent disagreement in the cases cited, the decided weight of these authorities, so far as they relate to the case made in the bill of exceptions, seems to be, that where one enters into the possession of land under and by virtue of a conveyance in fee, with covenants of warranty from another, and retains that possession, relying upon the grant or the possession under it, in aid of his title or possession, he can not deny the title thus acquired against the grantor and those claiming under him ; and it is not material *240 whether this preclusion is founded upon a legal estoppel or the “moral policy of the law” alluded to by Ch. J. Marshall in 7 Wheaton, supra. It is equally effective in either case, and the latter principle would seem to apply to conveyances without, as well as with, warranty.
Again, both parties derive title solely from John McIntosh, and are, therefore, precluded from denying the title of the person under whom both claim. Douglas v. Scott, 5 Ohio Rep. 197, and cases cited; Foster’s lessee v. Dugan, 8 Ohio Rep. 107; 4 Dev. & Batt. 368, 448.
We are, therefore, of opinion that there was no error in the holding that the defendant was estopped; but if it was erroneous, the judgment could not have been reversed. The possession originally derived from McIntosh, could not ripen into an adversary title as against him and thpse claiming under bim, and it does not appear that the defendant offered any evidence tending to impeach the title or seizin of McIntosh; but, on the contrary, it is expressly stated, as one of the postulates for the finding, that defendant derived neither title nor possession from any other source. It does not, therefore, affirmatively appear on the record that such error, if it be one, was prejudicial to the defendant. 6 Ohio St. Rep. 294, and cases cited.
Lastly, it is claimed, that the court erred in rejecting the deed of Susannah McIntosh, releasing her right of dower to the defendant below.
This deed, as shown by the bill of exceptions, was duly signed, sealed and attested, but was rejected by the court for alleged defects in the certificate of acknowledgment which reads as follows: “ State of Ohio, Washington county, Marietta, July 16, Anno Domini, 1836. The above named John McIntosh and Susannah, his wife, she being examined apart from her husband, agreeably to law, and the contents of this deed made known to her, the signers and sealers of the above instrument, personally appeared and acknowledged the same to be their free and voluntary act and deed, before me. Silas Cook, justice of peace.”
This deed was executed and the acknowledgment taken *241 under the act of February 22, 1831, “ to provide for the proof, acknowledgment and recording of deeds, etc.” S. and C. Stat. 458-461.
The first section relates to deeds, other than deeds by husband and wife, and requires the same to be signed and sealed by the grantors, which signing and sealing must be acknowledged before and attested by -two subscribing witnesses, and also acknowledged by the grantors before a judge, justice of the peace, notary public, mayor, or other presiding officer, of a town or city, who shall certify said acknowledgment on the same sheet on which said deed is written or printed.
The second section, so far as relates to the case made in the bill of exceptions, requires, “ that when a husband and wife * * * * shall execute within this state any deed * * * * for the conveyance * * * of her right of dower in any land * * * situate within this state, such deed * * * * shall be signed and sealed by the husband and wife; and such signing and sealing shall be attested and acknowledged in the manner prescribed in the first section of this act, and in addition 'thereto, the officer before whom such acknowledgment shall be made, shall examine the wife, separate and apart from her husband, and shall read or otherwise make known to her the contents of such deed * * * *, and if upon such separate examination, she shall declare that she did voluntarily sign, seal and acknowledge the same, and that she is still satisfied therewith, such officer shall certify such examination and declaration of the wife, together with the acknowledgment as aforesaid on such deed * * * * and subscribe his name thereto.”
In Silliman v. Cummins, 13 Ohio Rep. 118, it was held to be the settled law of this state, that the interest of a married woman in real estate, could only be transferred by a full compliance with the statute authorizing such transfer, and that unless the statutory provisions, from which alone her power to act is derived, are complied with-, a deed executed by her will be inoperative and void. And although some of the points adjudged in that case, in regard to the legal effect of curative statutes and the great strictness in reference to the certificate which it seems to enjoin, have been shaken in the subsequent *242 case of Chestnut v. Shane’s lessee and. four other eases, reported with it in 16 Ohio Rep. 599, et seq.; it is still undoubtedly true, that in order to make the deed of a married woman effective to transfer her estate or to bar her dower, there must have been a substantial compliance with all the requirements of the statute.
The certificate, however, need not be in the words of the statute; if it contains the substance of the requirements, though in the language of the officer, it will be sufficient. Brown v. Farran, 3 Ohio Rep. 154. Still no substantial part of the requirement can be dispensed with, and it must appear expressly or by necessary inference from the language of the certificate, that all the material provisions have been complied with. (Ib.)
The statute seems to require — 1. A joint acknowledgment by husband and wife of the deed. 2. An examination of her, by the officer, in the absence of her husband, at which time, the officer taking the acknowledgment, is required to read or make known to her the contents of the deed 3. A declaration from her to the officer, upon such separate examination, that she did voluntarily sign, seal and acknowledge the deed. 4. And instar omnium, the further declaration upon such separate examination, that she is. still satisfied therewith. 5, and lastly,, that all these facts should substantially appear in the certificate of the officer.
“ Such officer shall certify such -examination and declaration of the wife, together with the acknowledgment aforesaid,” i. e., the joint acknowledgment of the husband and wife, specified in the preceding part of the same section as well as in the first section to which it refers, “and subscribe his name thereto.”
At common law the wdfe could not, during coverture, transfer her interest in real estate by an ordinary conveyance, and this enabling statute only authorizes its being done, under certain .guards and restrictions, designed to obviate any undue influence or persuasion of the husband and leave her free and untrammeled. It would seem, therefore, that every precaution which the' statute enjoins, should be substantially complied with before an instrument executed by her, shall have *243 the effect of incumbering or divesting her estate. Prominent among these safeguards is the provision, requiring a declaration by the wife to the officer taking the acknowledgment, in the absence of the husband and after’explanation of the effect-of the instrument, not only that she did voluntarily sign, seal and acknowledge it, which was substantially complied with in the above certificate, but also that she is still satisfied therewith, and willing to part' with the interest it purports to convey. The husband, without resorting to coercive measures, by unremitted and persistent efforts, may induce a dependent and confiding wife to consent to a sacrifice of her true interests— a sacrifice to which she may have voluntarily though reluctantly consented. This provision of the statute was designed to confer upon a wife, thus circumstanced, a locus penitentice— an opportunity to withdraw before becoming irrevocably bound. To this end, she is to be removed temporarily from the presence and direct influence of her husband, and informed of the legal effect of the instrument she has executed, and required to declare hei continued satisfaction with, or dissent’ from, the projected contract. In view of the extraordinary influence which an embarrassed or unscrupulous husband, may exercise over one in such intimate relations with him, such a provision seems eminently just and appropriate.
The construction here given to the law of 1831, and the wife’s declaration of continued satisfaction, is apparent, when we consider the prior legislation in regard to'such conveyances, and the judicial construction placed thereon. This feature was, for. the first time, distinctly introduced by the law of 1831, though it was partially foreshadowed in the acts of 1818 and 1820 (2 Chase’s Stat. 1041, 1130), by which the wife was required, upon her separate examination, to declare, among other things, “ that she did and now doth acknowledge the signing and sealing thereof.”
The territorial law (1 Chase, 186), and the act of 1805 (1 Chase, 485), contained no such provision. Those statutes required a separate examination and explanation by the officer, and a declaration by the wife, “that she did voluntarily and of her own free will and accord, seal, and, as her *244 act and deed, deliver, the said deed or conveyance, without any coercion or compulsion of her husband.” The acknowledgment under these statutes, refers only to the circumstances' under which the wife executed the deed. It was required to be an acknowledgment of a, former voluntary act — ■ the sealing and delivery of the deed — and if this was done voluntarily, and acknowledged before the officer to have been so done, the deed was obligatory.
The change wrought by the act of 1818, in the form of the certificate, came before the court in Brown v. Farran, 3 Ohio Rep. 140, where the acknowledgment was, that the husband and wife, she being examined separate and apart, etc., “ acknowledged the indenture to be their voluntary act and deed,” and it was claimed by the late Charles Hammond, that the act of 1818 required a separate declaration by the wife of acts previously done, and of certain other facts as existing at the time of the acknowledgment — i. e., that she had acknowledged the instrument before the subscribing witnesses, and that she then acknowledged it before the justice as her voluntary act and deed. But Burnet, J., held, dubitanter, that the acknowledgment was good, and that the sentence, being eliptical, might be read, “ that she did sign and seal the deed, and now doth acknowledge the signing and sealing thereof te be,” etc.
The act of 1831 was passed shortly after this decision became generally known, and the legislature, in order to carry out, what was, no doubt, the intention of their predecessors — ■ the securing to the wife a right to retract at the last moment from a voluntary engagement entered into by her, and, at the same time, to express it in a form not liable to any further misconstruction, required a declaration on her part, “ that she did voluntarily sign, seal and acknowledge the instrument, and that she is still satisfied therewith.”
To say that this requirement is satisfied by a joint or a separate acknowledgment, that she voluntarily executed the deed, ignores its most important feature, and is a repeal rather than a construction of the act of 1831.
It is manifest, also, that while the decisions under former *245 laws maybe referred to in construction of provisions common to all, they furnish no guide in construing this particular provision, which is to be found in none of them-.
The certificate before us is peculiar in form. It begins with the names of John McIntosh and his wife; the separate examination of the wife is then stated, and followed by what purports to be a joint appearance and acknowledgment of the deed by both. The acknowledgment, preceded by a statement of the separate examination, may, perhaps, under the authorities, be regarded as separate instead of joint, which is the utmost that can well be claimed. It is then, so far as the wife is concerned, an acknowledgment that the instrument was her voluntary act and deed.' The statute required her to declare to the justice that she did voluntarily sign, seal and acknowledge the instrument, and, this acknowledgment goes no further. It is, perhaps, a substantial compliance with such requirement. The act of 1818, required her to declare that she voluntarily, and of her own free will and accord, did and now doth acknowledge the signing and sealing thereof, and this is all and even more than was done by Mrs. McIntosh in in the present instance. Her acknowledgment is, at most, a present declaration that the deed produced was her voluntary act. This is a substantial compliance with the first branch-of the requirement of the act of 1831, and if nothing more was intended, why superadd the clause as to present- satisfaction with the deed ? Statutes should be so construed as to give effect, if possible, to every provision. If acknowledging the deed to be her voluntary act is all that the law of 1831 requires, there was no occasion to repeal the law of 1818, and much less to superad’d the last provision of the law of 1831. Such construction tends to absurd and insignificant results J and we are constrained to hold that the act of 1831 requires the further declaration that she is still satisfied -with that voluntary act and deed ; and that she is not irrevocably bound, until this is done. It was a substantial provision inserted for the protection of married women, and could not be -dispensed with by the magistrate. If the declaration was made, it was *246 the duty of the officer to certify it, and we can not presume it in the absence of such certificate.
Courts have, certainly, gone great lengths in sustaining •conveyances of married women, which have been defectively •acknowledged. They were, no doubt, stimulated to do so, 'by the fact that otherwise the parties aggrieved would be without remedy; but this is no longer true, as the constitution and the law at this day, in all proper cases, afford a ■remedy against such persons.
A somewhat similar question arose in the states of Illinois and Missouri, under statutes of those states, by which the deed of a feme covert is made obligatory upon her, if she, ■upon separate examination, shall acknowledge that she executed the deed voluntarily, etc., “ and does not wish to retract” the certificates failing to state, that she did not wish to retract. In each of those states, the courts were divided on the question whether a fair construction of the statutes, under which the acknowledgments were taken, required the •officer to certify that she did not wish to retract, but all the judges seem to concur in holding that if it was so required, 'the objection would be fatal. Hughes et al. v. Lane et al., 11 Ill. Rep. 123; Chauvin et al. v. Wagner, 13 Misso. 531. The question which divided the courts of those, states could not arise under our statute, which imperatively requires the declaration to- be made, and if made, to be certified upon the deed itself.
We are aware that the views here expressed are in conflict with the case of Card v. Patterson, 5 Ohio St. Rep. 319. In that case, which arose under the act of 1831, a certificate by the justice of the peace, “ that the said Maria (the wife) being by me examined, separate from her husband, declared •that she signed the same of her own free will and accord,” preceded by the joint acknowledgment of the deed by her •and her husband, was held effective to transfer her interest in the lands conveyed. This certificate, it is true, varies from the certificate of Mrs. McIntosh in this, that it is preceded by a joint acknowledgment of husband and wife, and renders the inference, that she thereby expressed her satisfaction, *247 less forced than in the case at bar. Still it is not to be disguised that, under our conceptions of the statute, the certificate was insufficient. The declaration of continued satisfaction, to which we attach such importance, does not appear to have been noticed by the court, or the counsel managing the cause. The court refer to the statute of 1818, and the decisions under it, and the earlier laws, and after contrasting the certificate before them with one adjudged to be sufficient under the act of 1818, in Vattier v. Chesseldine, 16 Ohio Rep. 661, arrive at the conclusion, “ that the certificate in ques ■ tion, under the adjudications of this court, substantially com plies with the requirements of the act of 1831.” None of the statutes under which “ the adjudications ” referred to were made, contain the same, or any similar provision, it having been introduced for the first time into the act of 1831, to protect the estates of married women from hasty and ill advised alienations.
' While we entertain profound respect for the learning and ability of the court making the decision in that case, we are constrained to think it was decided upon its supposed analogy to adjudications under statutes essentially variant, and without properly estimating the change effected or intended to be effected by the act of 1831.
We are also sensible of the impolicy of disturbing decisions in reference to alienations of real estate; but we regard the decision in Card v. Patterson, as a substantial repeal of an express statutory provision, and a majority of the court are fain to believe, that a speedy retraction will be productive of less injustice than is likely to ensue from a blind adherence to a solitary decision, made in direct contravention of the statute.
Judgment affirmed.
Scott, C.J., and Sutlief and Gholson, J J., concurred.