Hughes, District Judge,
(after stating the facts.) It thus appears that the plaintiff in error excepts to the judgment of the court below on three grounds, viz.: First, a failure of the defendant in error to prove power to convey real estate in the executors who united with other grantors in conveying the land embracing house and lot 52 to the Marmet Company; second, irregularities in the notice to quit given to the defendant below; and, third, and chiefly, the variance in name between the Marmet Company, the nominal plaintiff below, and the Marmet Mining Company, of whom the defendant below was an employe and tenant, and the tenant in possession of house and lot No.. 52. Doubtless the first two objections are based really and chiefly upon the variance between the name of the plaintiff company shown by the record and that of the company which made the lease, and of whom Hackett held as lessee after June, 1886. The two objections would not probably have been made if this misnomer had not been used. But they will be dealt with as if no such variance appeared.
1. The first exception cannot be sustained. It is immaterial to this case whether the executors of Elisha Riggs had or had not power to unite in a conveyance of real estate; for, independently of the paper title, the Marmet Company proved a title by possession, and the payment of taxes for more than 10 years next preceding the institution of. this suit, a tenure which constitutes a perfect title under the laws of limitation in force in West Virginia. “Uninterrupted, honest, and adverse possession for the period prescribed by the statute not only gives a right of possession (in Virginia and West Virginia) which cannot be divested by entry, but also gives a right of entry and of action, if the party is plaintiff, which will enable him to recover, even against the strongest proof of a title, which, independently of such continued adversary possession, would be a better title.” 2 Minor, Inst.; Middleton v. Johns, 4 Grat. 129. This exception cannot be entertained, moreover, for another reason. The defendant below is in this case estopped from bringing in question the title of the plaintiff company to the premises which he holds from it. The relation of landlord and tenant between the plaintiff and the defendant below having been not only established by the plaintiff, but unqualifiedly admitted and affirmatively proved by the defendant below, objection from this tenant to this landlord’s title cannot be entertained by the court. In such a case “the title of the lessee is, in fact, the title of the lessor. He comes in by virtue of it, holds by virtue of it, and rests upon it to maintain and justify his possession. It is a part of the very essence of the contract under which he claims that the paramount ownership of the lessor shall be acknowledged during the continuance of the lease, and that possession shall be surrendered at its expiration. He cannot be allowed to contradict the title of his lessor without dis *273 paraging Ms own, and he cannot set up the title of another without violating that contract by which he obtained and holds possession, and breaking that faith which he has pledged, and the obligation of which is still continuing and in full operation.” Blight v. Rochester, 7 Wheat. 547.
2. The exception of the plaintiff in error to the service and the return of the notice to quit given him by the mining company cannot avail to invalidate the judgment below, for, without regard to any notice in writing at all, the plaintiff below had full right to maintain its action. He admits in his defense that he voluntarily ceased to work for the company, and the lease provides in express terms that the lessee shall deliver possession, “whether the same is terminated by notice or by his .ceasing to work for said company, as hereinbefore provided.” In the face of an admission that he had voluntarily ceased to work for the company, thereby violating the express stipulation of the lease, it is immaterial whether any notice to quit was given at all, and whether its service •and return were regular or not. This objection to the judgment of the court below must therefore be overruled.
3. We come now to the point which is the chief reliance of the plaintiff in error,to wit, that whereas the evidence produced at the trial went to establish title in the Marmet Company, the plaintiff of record in the court below, yet the lease on which the action is founded was made by the Marmet Mining Company, the defendant below being tenant of and holding from the Marmet Mining Company, “an entirely different company;” and therefore, that proofs of the title of the Marmet Company were improperly admitted in evidence at the trial of a suit for possession founded on a contract between the Marmet Mining Company and its lessee, the defendant below. The question presented by this exception is, therefore, whether a corporation is limited in its transactions strictly to the use of the name under which it was incorporated, and whether the use of such a variation in name as that of the Marmet Mining Company instead of the Marmet Company ipso facto vitiates its contract as to the company of the corporate name, and makes it in law necessarily a different and distinct corporation from the chartered one. A long line of authorities negatives such a contention, and establishes the proposition concurred in by courts and text writers, that a misnomer of the corporation does not invalidate a deed if it can be collected from the face of the deed, aided by extrinsic evidence, what corporation is intended; the real test being not identity of name, but identity of the corporation itself, or capability of identification. Mr. Dillon, in his work on Municipal Corporations, expresses the law of the subject as accepted by the courts:
“A misnomer or variation from the precise name of the corporation in a grant or obligation by or to it is not material if the identity of the corporation is unmistakable either from the face of the instrument or from the averment and proof.”
Identity of name,, therefore, being unnecessary, the only question in the case under consideration is as to the identity of the Marmet Mining *274 Company with the Marmet Company. This identity is established by the plaintiff in error himself. He proved affirmatively at the trial “that he had entered into the possession of the house and premises in question in this suit in June, 1885, as the tenant of the plaintiff, the Marmet Company, and that he held and occupied the same as such tenant, and paid the rent thereof to the said company as such tenant, prior to the date of the lease [June 22, 1886] given in evidence in this case by the plaintiff; * * * that after the date of said lease [which was from the Marmet Mining Company] he continued to mine coal for the said Marmet Company, and paid his rent for said house and premises to said company, [ his lessor being now the Marmet Mining Company,] up to the time he quit work for said company, * * * January 1, 1891; * * * and that he never received any notice to quit and surrender the premises in question from any one except the notice in writing given in evidence in this cause by the plaintiff;” the notice, be it observed, having been given by the Marmet Mining Company, and the plaintiff of record of which he speaks being the Marmet Company. Throughout his evidence given in his defense he speaks of and treats the plaintiff Marmet Company as identical with his lessor and employer under the lease of June, 1886, the Marmet Mining Company, as one and the same corporation. It was both proven by the plaintiff company and admitted by the plaintiff in error that the company was in possession of the premises embracing house and lot 52, and extensively operated them as a coal property from as early a date as 1866; that the plaintiff in error was in its employment as well before the lease of June, 1886, as after-wards down to 1891, receiving wages from and paying rent to the Mar-met Company before and the Marmet Mining Company after June, 1886, as one and the same corporation. Not only is this identity of the corporation recognized throughout by Hackett himself, but it is apparent also from the written evidence in the case. For instance, the first clause of Hackett’s lease from the company of June 22,1886, uses these words:
“The Marmet Mining company doth hereby lease to P. J. Hackett, now [that is to say, before the lease was entered into] in its employ, the tenement building marked and known as ‘ 52,’ upon the premises and coal property of the Baymond City coal property, now in the possession and under the control of said Marmet Mining Company. ”
The identity of the Marmet Company with the Marmet Mining Company being thus established beyond all doubt, the objection of the plaintiff in error to the judgment of the court below, founded upon this variation in the use of the name of the corporation, cannot be sustained.
The judgment of the court below must therefore be affirmed.