### DE LUCA et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 5, 1924.)

No. 4298.

1. **Internal revenue ⬤=⇒39, 40—Forgery of revenue strip stamps for liquor bottled in bond held crime.**

 Even if Act March 3, 1897 (Comp. St. §§ 6070–6077), providing for bottling of distilled spirits in bond, was repealed by National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), it was revived by Supplemental Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 10138½aaa), and forgery of, or use or possession of forged, revenue strip stamps for liquor bottled in bond remains an offense.

2. **Internal revenue ⬤=⇒47—Where joint possession of forged revenue stamps is charged, evidence must show joint participation in offense.**

 Where joint possession of forged revenue strip stamps was charged, government's evidence must show joint participation in offense, and pos-

---

⬤=⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

session by one defendant would then be constructive possession by the other.

**3. Conspiracy ⬥48—Internal revenue ⬥47—Circumstantial evidence held not inconsistent with accused's innocence of conspiracy to violate Prohibition Act and of possessing and using forged revenue stamps.**

In prosecution under Penal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, and for use and possession of forged revenue strip stamps, described in Act March 3, 1897 (Comp. St. §§ 6070–6077), circumstantial evidence of guilt of one of accused, *held* not inconsistent with his innocence, and request for affirmative charge should have been granted.

**4. Criminal law ⬥552(3)—Facts proved by circumstantial evidence must be inconsistent with accused's innocence.**

Where circumstantial evidence is relied on, circumstances proved must not only point to guilt, but must be inconsistent with his innocence.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Sam De Luca, alias Ferrito Nicola, and Nello C. Pandolfo, alias N. C. Pandolfo, were convicted under Penal Law, § 37, of conspiracy to violate the National Prohibition Act, and of using and possessing forged revenue strip stamps, and they bring error. Judgment affirmed as to defendant De Luca, and reversed and remanded as to defendant Pandolfo.

Alex C. Birch, of Birmingham, Ala. (Weatherly, Birch & Hickman, of Birmingham, Ala., on the brief), for plaintiffs in error.

Jim C. Smith, Asst. U. S. Atty., of Birmingham, Ala. (C. B. Kennamer, U. S. Atty., of Guntersville, Ala., on the brief), for the United States.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

CALL, District Judge. On September 3, 1920, an indictment, numbered 5330, was returned, charging Sam De Luca and Nello C. Pandolfo with conspiracy to violate the Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), under section 37 of the Penal Code (Comp. St. § 10201). The first count charges the conspiracy was to sell, transport, and have in their possession certain liquors in violation of the National Prohibition law. The second count charges the conspiracy was to have the illegal possession of certain intoxicating liquors. Sixteen overt acts are set forth in count 1, and these are adopted in count 2. On the same day another indictment, numbered 5331, was returned against these parties, containing 8 counts, and charging as follows, to wit:

First count, the use of a forged revenue stamp, described in the Act of Congress approved March 3, 1897, entitled an "Act to allow bottling of distilled spirits in bond" (Comp. St. §§ 6070–6077), to wit, a "strip stamp" bearing the words "W. A. Gaines & Co. Stamp," by placing same over the mouth of a certain quart bottle containing distilled spirits, with intent to utter said stamp as a true and genuine internal revenue stamp; second count, the possession of 248 certain forged "strip stamps," bearing the words "W. A. Gaines & Co. Stamp," which are

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in the similitude of genuine internal revenue stamps issued under said act, with intent to use said forged stamps as genuine and thereby defraud the United States, well knowing said stamps to be forged; third count, possession and concealment of 248 forged "strip stamps," of securities and obligations of the United States, with intent to pass and publish them as genuine; fourth count, with intent to defraud, having in their possession 50 forged "strip stamps," with "Old Lewis Hunter Distillery Stamps" printed thereon, with intent to use same by pasting over the mouths of bottles containing other than genuine distilled spirits, thereby to defraud the United States; fifth count, the use of 2 forged "strip stamps" described in count 4, by placing same over the mouth of 2 quart bottles containing distilled spirits other than genuine distilled spirits in bond, knowing the same to be forged, and with intent to defraud; sixth count, having and concealing, with intent to defraud, 50 forged "strip stamps," and with intent to pass and utter as genuine said forged "strip stamps," knowing them to be forged; seventh count, possession of 248 "strip stamps" of the tenor and effect of those described in count 2, with intent to utter and publish as genuine, thereby to defraud persons unknown; eighth count, possession of 50 forged "strip stamps," well knowing them to be forged, with intent to utter them as genuine, and thereby defraud persons unknown.

The defendants demurred to this last indictment, No. 5331, on various grounds. The only one insisted upon in argument and brief is that the Act of March 3, 1897, was repealed and no longer in existence. This demurrer was overruled, and the action of the court is here assigned as error. Thereafter, indictments Nos. 5330 and 5331 were consolidated, a trial had upon such consolidated indictments, and a verdict rendered convicting both defendants on counts 1 and 2 of indictment 5330, and each count of indictment 5331, and each defendant sentenced to pay a fine of $100 and be confined in the Atlanta Penitentiary for two years.

After the close of all the testimony, Pandolfo requested an affirmative charge to the jury from the trial judge to find him not guilty. This charge was refused and exception duly noted. The refusal to give said affirmative charge is assigned as error. De Luca appears to have requested certain affirmative charges, 1 to 9, which were refused, and such refusal excepted to, but such requested charges do not appear in the record.

[1] Taking up the error assigned to the ruling of the trial judge in overruling the demurrer to indictment No. 5331, charging the possession, etc., of the forged revenue stamps, we see no error in such ruling. If the provisions of the Act of Congress of March 3, 1897, had been repealed by the National Prohibition Act (which we do not decide), the supplemental Act of November 23, 1921 (Comp. St. Ann. Supp. 1923, § 10138½aaa), revived it and put it in force as to the offenses charged in the indictments. U. S. v. Stafoff, 260 U. S. 477, 43 Sup. Ct. 197, 67 L. Ed. 358.

The defendants before trial demurred generally to both indictments, which demurrer was overruled. It is not necessary to discuss the assignments of error to the court's ruling on this general demurrer further, as they are not insisted upon in the argument or brief.

[2] The other error assigned and insisted upon is that the court erred in refusing the affirmative charge, requested by Pandolfo, to find him not guilty. There was no testimony offered which connected Pandolfo directly with the actual possession of any of the liquor or forged revenue stamps found in the possession of De Luca. Indictment 5331 charges in each count the joint possession by the defendants, and, in so far as this indictment is involved, the evidence of the government must show joint participation in the commission of the offense before the jury would be justified in convicting. Then the possession of De Luca would be constructively the possession of Pandolfo. Therefore if the evidence was such as to require the court to have given the affirmative charge under indictment No. 5330, it follows that the same instruction should have been given under indictment 5331 as to Pandolfo.

[3] The question then resolves itself to this: Was the evidence, taking it as true and resolving any conflicts in favor of the government, such as to support a verdict of guilty of conspiracy against Pandolfo? If it is, then the affirmative charge should not have been given, and there was no error in the court's ruling on the request. Circumstantial evidence was relied upon to connect Pandolfo with the commission of the offense charged in each indictment. The trial judge so instructed the jury, and we think correctly. The circumstances relied upon to show Pandolfo's guilt, as shown by the evidence, may be stated as follows, to wit:

(1) The fact that the two defendants were acquainted, both being Italians.

(2) Sam De Luca was lessee of rooms 6 and 7 in a building, and Pandolfo had desk room in room 6. This circumstance must be considered in connection with the facts that no liquor was found in room 6, and that the door between the two rooms was closed, locked, and barred with articles of furniture.

(3) That Pandolfo was a chemist, and had been engaged in the manufacture of barber's supplies, in which chemicals were used.

(4) That Pandolfo came to the commissioner's office when De Luca was there under arrest and departed with him.

(5) That within an hour or hour and a half De Luca was again arrested near the garage in the rear of the home of Pandolfo, with liquor and other incriminating articles in his car.

(6) That Pandolfo on at least one occasion visited De Luca at his room, where he was sick, and once was seen sitting in a car in front of the house where De Luca had his room, while De Luca was in the house.

(7) That, when Pandolfo was arrested by the deputy marshal an inquiry was made as to where De Luca could be found, he told the deputy, if he would not arrest him (De Luca), he (Pandolfo) would bring him to the commissioner's office next morning, which he did.

(8) That Pandolfo occupied as his home the portion of the house above the basement or cellar in which certain incriminating articles were found.

(9) At the time of De Luca's arrest with his car on July 3d the agents searched the basement of the house occupied by Pandolfo, as

set forth in No. 8 above. Some "whisky cans" and a great quantity of bottles branded "Lewis .Hunter" and "White Horse" and several other brands in quart bottles were found.

These are all .the circumstances in the testimony having any bearing upon the charge of conspiracy connecting Pandolfo with the charge. These circumstances must be considered in connection with the undisputed further facts, appearing in the record, that some four months before the charges in these indictments are claimed to have occurred Pandolfo sold an equity he had in the house occupied by himself and family to Dc Luca, and at the time of the occurrence of the events detailed in the testimony as to the finding of liquor, forged stamps, etc., De Luca was in the possession of the basement and garage, and Pandolfo was occupying the upper portion of the house, under an agreement with De Luca whereby the basement of the house and the garage were in the exclusive possession of De Luca; that the basement was padlocked on the outside, and the entrance from the lower floor to the basement was nailed up, and no method of ingress or egress possible between the house and cellar; that the garage was padlocked, and De Luca had the only keys to the basement and garage doors; that from the time of the sale to De Luca Pandolfo had not entered either the basement or garage.

[4] The affirmative charge requested was, if the jury believed the evidence, they must find the defendant Pandolfo not guilty. The rule of law, where the government relies upon circumstantial evidence alone for conviction of a defendant, is that the circumstances proven must not only point to the defendant's guilt, but must be inconsistent with his innocence. As otherwise stated, the circumstances proven must be such as to admit of no other reasonable hypothesis or explanation than the guilt of the accused. Can it be said that the circumstances proven in this case are inconsistent with the innocence of Pandolfo? We think not. Every circumstance proven in this case is perfectly consistent with innocence, and the request for the affirmative charge should have been granted.

The only evidence in the record to connect Pandolfo with the offense charged in indictment 5331 was that relied on to convict him of conspiracy, and, that being insufficient for that purpose, it follows that he should have been acquitted under this indictment also.

Error is also assigned on remarks of government counsel to the jury in argument. These remarks, on objection by counsel for Pandolfo, were ruled improper by the court and counsel stopped. No motion was made to order a mistrial. The court properly performed its duty in the premises. As this case is reversed as to the objecting defendant on other grounds, it is not necessary to discuss that assignment further than to refer to the language used by this court in Latham v. United States, 226 Fed. 425, 141 C. C. A. 250, L. R. A. 1916D, 1118, and Miller v. United States, 287 Fed. 864.

The defendant De Luca is here as a plaintiff in error also. This is not a general verdict of guilty, except on indictment 5331; yet the judgment of the court imposed upon him is general, and could have been imposed under conviction of any one of the counts of which he

was convicted in indictment 5330 and indictment 5331. Said judgment as to Sam De Luca is therefore affirmed.

The judgment against Nello C. Pandolfo is reversed, and the cause remanded to the lower court for further proceedings not inconsistent with this opinion.