### LEMPIE v. UNITED STATES.
#### No. 5966.

Circuit Court of Appeals, Ninth Circuit.
March 18, 1930.

T. D. Page, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

DIETRICH, Circuit Judge.

Appellant was adjudged guilty upon an indictment charging violations of the Internal Revenue Laws (26 USCA §§ 306, 307), in that on or about July 1, 1927, he (1) carried on the business of a distiller of spirits without having given bond, as required by law, and (2) he made and fermented a quantity of mash fit for distillation of spirits, not in a distillery duly authorized according to law, but at a point "located approximately 150 yards" from premises occupied by him. Seasonably and in an appropriate manner he challenged the sufficiency of the evidence to warrant a conviction, and the ruling on his motion in that regard presents the question submitted for our consideration.

Appellant resided in a densely timbered, broken section of the country. The extent of his holding does not clearly appear, but it is shown that he had lived there only three or four months 'prior to July 1, 1927. In full scope and substance the evidence adduced by the government may be stated as follows: Price, a deputy sheriff, testified that in pursuance of his duties he "visited the neighborhood of defendant, five acres of high, dense forest, a mile and a half from the ocean in west Clallam County and abutting on the Quilieute River; that he approached said property around an old railroad grade a mile and a half distant, and then came along the river until he was virtually on defendant's property, where he observed a well-defined trail; that in making a detour through the woods and adjoining defendant's property, he found a trail leading from the bank or near the bank of the Quilieute River, and following said trail, found a still used for the purpose of manufacturing moonshine whiskey; that about this time he was joined by Fred Rice, another Government agent, and together they guarded the still for a considerable time, but no one visited the same, and thereupon they destroyed the still and preserved the finished product found; that upon further investigation the witness * * * found a trail that led past and through the property of the defendant, toward the river bank, and from there to the point where the still was located; that they found also an automatic engine pumping water into pipes, which ran through and beneath the land of the defendant, to which pipes there was connected, at a point just outside the line of the defendant's property, a galvanized iron pipe having the appearance of newness, which led to the still and supplied it with the water necessary for its operation; that upon searching the premises of the defendant, they (the witness and his associates) found no evidence of anything that could be used in the manufacture of moonshine whiskey." Such is the full testimony of this witness, in narrative form as exhibited in the bill of exceptions; and it is added that his testimony was corroborated by that of the three agents who accompanied him at the time.

The defendant produced witnesses, and he himself testified in his own behalf. Within the range of reason the jurors are undoubtedly the exclusive judges of the credibility of witnesses and the weight to be given to the testimony, and the rule would exclude interference by either the trial court or this court touching some of the testimony adduced by and on behalf of the defendant. But on the record as it stands we are of the opinion that the jurors could not, without acting arbitrarily and capriciously, decline to accept the testimony showing that, with the exception of the small section of pipe referred to by the witnesses for the government as "having the appearance of newness," the water system from which this pipe led, consisting of main pipes, a tank and an automatic pump, was installed and used for approximately three years prior to July 1, 1927, and that the defendant did not occupy the premises prior to March of that year.

The witnesses for the government themselves testified that the pump was automatic, that is, that the power was automatically turned on and off by the filling and emptying of the tank. Whether the lateral pipe leading to the still had been recently laid or was old was plainly a question for the jury, and for present purposes we must assume the theory of the government's witnesses. But we need not consider any of the evidence offered on behalf of defendant or comment upon it further than to say that, in the most favorable view to the government, its case was not strengthened thereby. Taking into consideration only the evidence it offered, we are of the opinion that, as a matter of law, it was insufficient to convince a fair-minded man beyond a reasonable doubt of the truth of the charge. There is no evidence as to how long the still had been there; it was in a densely timbered, broken country; it was not upon premises owned or controlled by the defendant, but was approximately a sixth of a mile therefrom; assuming that the lateral pipe was new, the connection was not made on defendant's premises, and could easily have been effected by a third party without his knowledge; the several trails testified to could easily have been made by hunters, fishermen, and live stock, and third parties operating the still. In short, the meager circumstances with all fair inferences only give rise to a suspicion, and do not at all exclude the reasonable theory of defendant's innocence. See Benn v. United States (C. C. A.) 21 F.(2d) 962; Harlivy v. United States (C. C. A.) 13 F.(2d) 114; De Luca v. United States (C. C. A.) 298 F. 412; De Villa v. United States (C. C. A.) 294 F. 535.

Reversed.