### SYMONETTE et al. v. UNITED STATES.
#### No. 5901.

Circuit Court of Appeals, Fifth Circuit.
March 6, 1931.

Burton G. Henson, of Tampa, Fla., for appellants.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla.

Before FOSTER, Circuit Judge, and HUTCHESON and SIBLEY, District Judges.

HUTCHESON, District Judge.

Appellants having been convicted of a conspiracy, entered into in the Southern District of Florida, to violate the National Prohibition Act, and the Tariff Act in regard to alcoholic beverage liquors, appeal, assigning many errors. Here, however, appellants present only three points: (1) The error of the court in instructing the jury in substance that in arriving at their verdict they should not consider whether the seized boat was British or American, and whether the seizure was legal or illegal; (2) that the court erred in permitting secondary evidence of the contents of the crew lists of the seized vessel to be offered over the objection of the appellants that the crew lists themselves were the best evidence, and should be produced; and (3) that the court erred in refusing appellants' motion for a directed verdict at the close of the evidence, for want of evidence to prove that the appellants conspired together in the Southern District of Florida to commit an offense against the laws of the United States.

■■ The first point is without merit. We think it plain, however, that the case must be reversed both because there was error in the second point, the admission in evidence of the contents of the crew lists as claimed by the appellants, and especially because appellants' motion for a directed verdict should have been granted, there being no sufficient evidence on which the verdict could rest.

This is one of those cases, of which the books contain too many instances, of an effort by the government, on a conspiracy indictment, to supply the place of testimony by piling inference upon inference; of an effort to make deduction take the place of proof; and to have the jury, by reasoning backward from noncriminal acts, build up by inference a state of facts to make them criminal, which, if they in fact exist, the evidence ought to have established.

The facts are that, at a point about 46 miles distant from the nearest mainland of the United States, and about 14 miles west of Settlement Point in the Bahama Islands, a small motorboat of American registry, the V14992, was captured by a United States Coast Guard cutter.

The proof of the government was to the effect that the boat was sighted with four other motorboats proceeding on the high seas westward toward the coast of Florida. The Coast Guard cutter fired warning shots, and the other four motorboats turned back eastward and escaped into Settlement Point. The captured motorboat had approximately 284 sacks of assorted liquor aboard and the two appellants.

Symonette testified that he had left West Palm Beach a day or two before, and that the liquor had been loaded in Settlement Point, and it was being carried to Bimini. He denied that he had made any incriminating statements to the cutter's officers; said that Wallace did not leave West Palm Beach with him, but that he picked him up at West End, where Wallace asked him for a ride to Bimini.

He stated that he had no manifest; that he did not have his crew list; that Wallace was not a member of his crew; that he had never entered into any agreement to bring intoxicating liquors into the United States.

Appellant Wallace testified that he did not leave the United States with Symonette; that he had known Symonette for about a month before the seizure of the boat; that he had never conspired nor confederated with Symonette to handle liquor in the United States; that he had left Florida about March 27th to fix a boat; and that he was on Symonette's boat because Symonette was taking him to Bimini.

The government offered the testimony of the Coast Guard officer that Symonette at

first told him that they were going to Bimini; later that Symonette laughed, and said he was not going to Bimini, but he was going to Palm Beach; that the appellant Wallace was not present during this conversation; that Symonette said that catching that liquor would break three different parties in Palm Beach.

There was no testimony of any admission of any kind by Wallace. The government offered testimony that Wallace and Symonette had been seen together at West Palm Beach on some previous occasions, and of Government Agents Wallace and Albury, over the objection of counsel for Wallace, that they had seen Wallace's name on the crew lists of the boat, and one of these witnesses testified that he had seen Wallace's name on the crew list on the last clearance of the boat.

It will be noted that there is no direct evidence whatever of any conspiracy or agreement having been entered into in the United States by Wallace and Symonette, and no circumstances are relied upon as a basis for the inference of conspiracy, except the circumstance that Wallace and Symonette had been seen together on one or more occasions in the United States, and considering the objected to testimony that Wallace was a member of the crew of the boat when it last put out from Florida.

It will be borne in mind that the boat when seized was 46 miles from the United States, at a place and under circumstances where it had a lawful right to have liquor on board, without a fact being presented in connection with the seizure to in any way support an inference that an offense had been or was about to be committed, for the fact that the boat was proceeding westward, if of any importance in itself, was explained away by testimony that at or about that point boats took a westward course on their way to Bimini; and, while it is true that there was evidence of Symonette's statement (denied by him) that he was on his way to Palm Beach, this statement, if true, constitutes no evidence that he was so on his way as the result of a conspiracy or agreement with Wallace, formed before he left the United States to return there with the contraband load.

In this state of the record, not only is every circumstance relied upon to make up the web of conspiracy as consistent with innocence as with guilt (De Luca v. U. S. [C. C. A.] 298 F. 412, 413), but all of the superstructure of conjecture and surmise upon which the verdict rests is founded upon so slight a base of testimony as to give no support whatever to the verdict, and this wheth-

er the objected to evidence is taken into, or rejected from, consideration.

For while it is true that a conspiracy may be, and most often must be, proved by circumstantial evidence, and that a court has jurisdiction of a conspiracy charge if the evidence shows either that the unlawful agreement was entered into, or an overt act to carry it out was committed, within the jurisdiction of that court, it is absolutely necessary that one or the other of these facts must be established, and, when the case, as here, leaves both of these matters to conjecture, a verdict for the defendant should have been directed. Vaccaro v. United States (C. C. A.) 30 F.(2d) 678; Linde v. United States (C. C. A.) 13 F.(2d) 59; La Rosa v. United States (C. C. A.) 15 F.(2d) 479; Dickerson v. United States (C. C. A.) 18 F.(2d) 887; Coleman v. United States (C. C. A.) 11 F.(2d) 601; Lewis v. United States (C. C. A.) 11 F.(2d) 745; Dow v. United States (C. C. A.) 21 F.(2d) 816; Haning v. United States (C. C. A.) 21 F.(2d) 508, 509.

The judgment of the court below is reversed.

SIBLEY, District Judge (concurring).

I agree that the case should be reversed because of the erroneous admission of secondary evidence of the port record showing Wallace as the crew when the captured boat left West Palm Beach. But, with that fact well proven, the evidence would have authorized the verdict. We then have a case of two men putting to sea together, and in a convenient time returning towards their home port with a contraband cargo. When challenged, they attempt to flee, but do not succeed in escaping, as did their companion boats. When caught, they can show no ship's papers, and Wallace falsely says he had not come out with the boat, and Symonette first says he was bound for Bimini, which lay at right angles to their course, and then says he was on the way back to West Palm Beach. While being on the high sea with a boatload of liquor is no crime, and while it might be reasonably possible that they were proceeding west to go south later, yet their flight and falsification is inconsistent with the hypothesis of innocence. Innocent men do not usually flee nor falsify. The jury could reason that they left port with a purpose, and, leaving together, that it was a common purpose. If it was also a criminal purpose, it was in pursuance of a conspiracy previously formed in Florida and in the jurisdiction of the court. What that purpose was is shown by

what they actually did, to wit, get a boatload of liquor and start back to port. Flight and falsification indicate that it was not the innocent enterprise of taking liquor to Bimini, if any reason for this Florida boat to engage in carriage between two foreign ports had been suggested, but that it was consciously a criminal enterprise which could only be that of carrying the liquor back to Florida. In every trial there are many occurrences and appearances that help to the truth that cannot get into a record, especially when the defendants testify as they did here. A jury could well have been convinced beyond a reasonable doubt that the defendants conspired in Florida to get the liquor, went for it, and were caught in the act of bringing it in.