## TREFONE v. UNITED STATES.
### No. 911.

Circuit Court of Appeals, Tenth Circuit.
Nov. 23, 1933.

A. R. Morrison, of Denver, Colo. (Jacob V. Schaetzel, of Denver, Colo., on the brief), for appellant.

John A. Carroll, Asst. U. S. Atty., of Denver, Colo. (Thomas J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Concededly six gallons of whisky were transported by defendant as charged in the indictment. His defense was that one Patuous asked him for a lift, and that Patuous told him the package Patuous put in the car contained laundry. Patuous testified that Trefone knew it was whisky and that Trefone was delivering it to one of Trefone's customers. The jury were fairly charged on the pivotal question of guilty knowledge and decided that Patuous told the truth. We will notice briefly the trial errors specified in the brief. Wabash Ry. Co. v. Lindley (C. C. A. 8) 29 F.(2d) 829.

■ 1. Engstrand, a government agent, testified to finding the liquor in the car. On cross-examination he was asked whether Patuous had not told him at one time that Trefone did not furnish the liquor to Patuous. An objection was properly sustained. What Patuous said outside of court was clearly hearsay. Counsel asking the question got ahead of the hounds. When Patuous later testified it was Trefone's whisky, counsel properly asked him if he had not told Engstrand to the contrary; no objection was made to that question. The answer is not entirely intelligible, but it apparently satisfied counsel, for no effort was thereafter made to contradict it.

■ 2. Patuous testified he never bought any groceries from Trefone; that he lived in Trefone's house rent-free; that he worked for Trefone. On Trefone's direct-examination he testified Patuous did buy groceries from him and produced 76 sales slips in the name of "G. Patches." They were identified but not offered in evidence. He testified that Patuous rented a house from Trefone's sister, and paid Trefone the rent. He then produced a book of rent receipts which Trefone wrote, his sister signed, and Trefone delivered to Patuous. It was conceded that the documents identified were not the original receipts, and there was no proof that they were carbon or correct copies. Furthermore, it was a collateral issue, offered only for the purpose of impeachment, and was fully covered by the direct testimony that Patuous did pay rent for many months. Duplicate receipts, if they were such, would add little if anything to the testimony, but would greatly encumber the record.

■ 3. Hypercritical objections are made to the charge to the jury, notwithstanding the absence of any objection thereto at the trial. Save for an exception not here pertinent, trial errors are not reviewable unless the trial court's attention is called thereto by specific objection and exception. Addis v. United States (C. C. A. 10) 62 F.(2d) 329; Armstrong v. United States (C. C. A. 10) 65 F. (2d) 853.

■ The principal objection urged is that the trial court, after admonishing the jury that they were the sole judges of the facts, and that defendant's testimony was entitled to their careful consideration, stated to the jury that "I have very serious doubt as to the correctness of everything that he told on the witness stand." We advert to the matter because so many of the bar persist in the mistaken belief that trial judges in the courts of the United States have been emasculated of their constitutional power to advise the jury on the facts, as have the trial judges in many of the states. The genius of the jury system, as it was known in England when our Constitution was adopted, was that the trial was "in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts." [1] So important is this power of the trial court that the Supreme Court of the United States has recently characterized it as the second of the three requisites of a constitutional trial by jury, a requisite beyond the power of Congress to destroy or abridge.[2] Chief Justice Hughes, in speaking for the court recently, held that

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. Herron v. Southern Pacific Co., 283 U. S. 91, 95, 51 S. Ct. 383, 75 L. Ed. 857. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."[3]

■ The power to superintend and direct the trial and to advise on the facts must not be abused. If the testimony is summed up or analyzed, care must be taken to sum up and analyze both sides; if comment is made, or a belief as to credibility expressed, it should be done dispassionately and the jury advised that the responsibility, in the last analysis, is theirs. The judge must not become an advocate. The line between fairness and unfairness, between legitimate comment and advocacy, is a shadowy one.[4] Suffice it to say that the trial court's comment here challenged is well on the side of fair comment, and is not open to criticism.

The judgment is affirmed.

[1] The language of Justice Gray in Capital Traction Co. v. Hof, 174 U. S. 1, 13–16, 19 S. Ct. 580, 43 L. Ed. 873.

[2] Patton v. United States, 281 U. S. 276, 290, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263.

[3] Quercia v. United States, 289 U. S. 466, 469, 53 S. Ct. 698, 77 L. Ed. 1321.

[4] Minner v. United States (C. C. A. 10) 57 F.(2d) 506; Coulston v. United States (C. C. A. 10) 51 F.(2d) 178, 180; Hickory v. United States, 160 U. S. 408, 16 S. Ct. 327, 40 L. Ed. 474; Quercia v. United States, supra.