## HOFFMAN et al. v. UNITED STATES.[*]
### No. 834.

Circuit Court of Appeals, Tenth Circuit.
Dec. 20, 1933.

[*]Rehearing denied February 3, 1934.

Granby Hillyer, of Denver, Colo., for appellants.

John A. Carroll, Asst. U. S. Atty., of Denver, Colo. (Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for the United States.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The first count of the indictment herein charged that Otis Hoffman and Warner Doyle conspired to injure, oppress, threaten, and intimidate Frank Sanchez, a citizen of the United States, in the free exercise and enjoyment of a right and privilege secured to him by the Constitution and laws of the United States; and because of the exercise of such right by Sanchez by informing a prohibition agent that about February 11, 1932, Otis and Donald Hoffman had unlawfully possessed, sold, and transported intoxicating liquor. The second count charged a like conspiracy to injure, oppress, threaten, and intimidate Tom Hanley.

The jury found the defendants guilty on both counts. Hoffman was sentenced to serve five years on each count, sentences to run concurrently, and to pay a fine of $1,000 on each count. Doyle was sentenced to serve two years on each count, sentences to run concurrently, and to pay a fine of $500 on each count.

The evidence introduced by the government established the following facts: On February 11, 1932, Sanchez and Tom Hanley went to the Hoffman ranch in a federal officer's car, and purchased some whiskey. Donald Hoffman was arrested that evening and put in jail. On the following day Sanchez and a federal prohibition agent went to a deputy district attorney's office in Lamar, Colorado, and Sanchez made a statement concerning the purchase of whiskey from Donald at the Hoffman ranch. On February 13, 1932, a complaint was filed with the United States Commissioner against Donald and Otis Hoffman.

On February 23, 1932, about seven o'clock in the evening, Otis Hoffman and Doyle drove to the premises occupied by Sanchez. Doyle went to the house and invited Sanchez out to the car to have a drink. Upon reaching the car, Doyle grabbed Sanchez from behind and pushed him into the front seat of the car. The car was started and Sanchez was told that they were going to a side road, where they would have a drink. Instead, they drove to the Hanley house. Otis Hoffman said to Doyle, "Bring the boy." Doyle returned with Joe Hanley. Otis then said to Joe, "I don't want you. It is your kid brother." Tom, who had followed Doyle and his brother, then walked up to the car and spoke. The defendants told Tom to get into the car. Tom said he wanted to get his coat. Defendants said he would not need a coat, that they were only going to give him "a ride in town." Tom entered the car and the defendants inquired who had sent him to buy whiskey at the Hoffman ranch. He replied that it was a federal man. Otis said, "Your and Frank's statements don't hold together very good. * * * If you double-cross me, I will take you where you won't need a coat." They had traveled about a quarter of a mile when a car occupied by Mrs. Hanley, her daughter, and son-in-law drove alongside. Mrs. Hanley called on Otis to stop. He tried to speed up but the other car crowded him to the side of the road. Thereupon Tom jumped out and got into the other car. Defendants then drove with Sanchez to a place known as the sand hills. Doyle told Sanchez he was double-crossing Otis, and "that the United States people wouldn't stand for double-crossing"; and that it would be "too bad" for him if he "double-crossed them." Otis requested Sanchez to sign some notes, payable to Donald, and to make a statement that he went to the Hoffman ranch on Febru-

ary 11 to pay the notes. Sanchez consented and they then left the sand hills and went to the office of Hoffman's attorney at Lamar. The attorney asked Sanchez if he had made a statement about Donald, and upon being informed that he had, said that nothing could be done. The attorney then told Sanchez to go into the hall. Doyle and Sanchez complied with this request. Shortly thereafter Otis and his attorney joined them and they started downstairs. Sanchez tried to break away. Doyle caught him from behind and clamped his hand over Sanchez's mouth. Sanchez finally got away, ran across the railroad tracks to a cafe, and notified the night marshal.

After the government had rested, counsel for defendants interposed a motion for a directed verdict, one of the grounds assigned being that the government had not proved the citizenship of Sanchez and Tom Hanley. The government was permitted to reopen its case. Stella Hanley then testified that she was Tom's mother, and that he was born in Council Bluffs, Ia. Frank Sanchez testified, over objection, that he was born in New Mexico, had lived in that state and in Colorado all his life, and had voted in New Mexico and Colorado.

■ Permitting the government to reopen its case and introduce additional evidence was a matter within the sound discretion of the trial court. Horowitz v. United States (C. C. A. 5) 12 F.(2d) 590; Jianole v. United States (C. C. A. 8) 299 F. 496, 500. Assuming, without deciding, that Sanchez's testimony with respect to his place of birth was inadmissible, there was still sufficient proof of his citizenship. Sanchez testified that he resided in Lamar, Colorado, and that he had voted in New Mexico and Colorado. A person is presumed to be a citizen of the country in which he resides until the contrary is shown. Shelton v. Tiffin, 6 How. 163, 185, 12 L. Ed. 387; Blight v. Rochester, 7 Wheat. 535, 546, 5 L. Ed. 516; In re Person's Estate, 146 Minn. 230, 178 N. W. 738; State ex rel. Phelps v. Jackson, 79 Vt. 504, 65 A. 657, 8 L. R. A. (N. S.) 1245 and note; Garfield M. & M. Co. v. Hammer, 6 Mont 53, 8 P. 153, 156; Coxe v. Gulick, 10 N. J. Law, 328; Sandberg v. Borstadt, 48 Colo. 96, 109 P. 419; Abbott's Proof of Facts (4th Ed.) 375. Furthermore, a presumption of citizenship arises from the testimony of Sanchez that he voted in New Mexico and Colorado. Behrensmeyer v. Kreitz, 135 Ill. 591, 26 N. E. 704, 713.

■ To constitute a conspiracy there must be unity of design and purpose. It is bottomed on an agreement to accomplish an illegal act. Marcante v. United States (C. C. A. 10) 49 F.(2d) 156. However no formal agreement between the parties to do the act charged is necessary. It is sufficient that the minds of the parties met understandingly so as to bring about an intelligent and deliberate agreement to do the act and commit the offense charged, although such an agreement is not manifested by any formal words. Telman v. United States (C. C. A. 10) 67 F.(2d) 716, decided Nov. 29, 1933; Lawlor v. Loewe (C. C. A. 2) 209 F. 721, 725; Id., 235 U. S. 522, 35 S. Ct. 170, 59 L. Ed. 341.

In Telman v. United States, supra, this court said: "A mutual implied understanding is sufficient so far as the combination or confederacy is concerned, and the agreement is generally a matter of inference, deduced from the acts of the persons accused which are done in pursuance of an apparent criminal purpose. It is rarely susceptible of proof by direct evidence, and may be deduced from the conduct of the parties and the attending circumstances." See, also, Goode v. United States (C. C. A. 8) 58 F.(2d) 105; Murry v. United States (C. C. A. 8) 282 F. 617; Coates v. United States (C. C. A. 9) 59 F.(2d) 173; Symonette v. United States (C. C. A. 5) 47 F.(2d) 686.

■ The facts established, together with the inferences to be drawn therefrom, were clearly sufficient to justify the jury in finding that the minds of the defendants met in an understanding way, and that there was a deliberate agreement upon their part to do the act and commit the offense charged in the indictment.

■ It is urged that the trial court erred in permitting L. E. Alderman to testify in rebuttal that he and Sanchez went out to the sand hills and found a place where a car had stopped. The admission of evidence in rebuttal that should have been introduced in chief, rests in the discretion of the trial court, and its rulings thereon are not reviewable, in the absence of an abuse of discretion. Miller v. United States (C. C. A. 8) 21 F.(2d) 32, 38.

■ Jane Hanley testified that Otis and another man came to their house about four o'clock in the morning of February 24, 1932, and tried to get in, and upon being refused uttered oaths. This evidence was admissible to show Otis's state of mind toward the Hanleys. He was charged with conspiracy to injure Tom Hanley because Tom had informed a prohibition agent of a violation of the prohibition law by Otis and Donald Hoffman. This evidence showed an antagonistic feeling

on Otis's part, and tended to rebut any inference that his call of the night before to take Tom for a ride was a friendly one.

Almost every instruction given by the court is assigned as error. No objections were made to the charge and the only corrections asked for were made. Trial errors ordinarily will not be reviewed unless the trial court's attention was called thereto by specific objection and exception. Aldridge v. United States (C. C. A. 10) 67 F.(2d) 956; Trefone v. United States (C. C. A. 10) 67 F.(2d) 954; Addis v. United States (C. C. A. 10) 62 F.(2d) 329, 331; Order of United Commercial Travelers of America v. Greer (C. C. A. 10) 43 F.(2d) 499. However, as a whole the instructions were fair, and correctly stated the law.

The assignment of error with respect to the court's refusal to permit defendants to cross-examine Tom Hanley for the purpose of testing his credibility as a witness and showing his interest in the result of the prosecution, does not comply with Rule 11 of this court, and for that reason need not be considered. Kolton v. United States (C. C. A. 10) 67 F.(2d) 741; Greenway v. United States (C. C. A. 10) 67 F.(2d) 738. Furthermore, we fail to find any error in the rulings of the trial court made during such cross-examination.

The judgments are affirmed.